***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant.
3. Travelers Indemnity Company was the carrier on the risk for Employer-Defendant.
4. There is no issue as to misjoinder or nonjoinder of parties.
5. The Plaintiff's average weekly wage is $468.00.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 29 years old, has a GED, and began working as an assistant pressman for Employer-Defendant's printing business in April 2008.
2. Plaintiff had prior experience operating an offset web press and registering color. These skills were significant contributions or traits that led to his hiring. Part of the understanding when Plaintiff was hired was that Plaintiff would ultimately substitute for the press foreman when needed, including running the presses.
3. On June 26, 2008, Michael Willard, publisher and general manager for Employer-Defendant, and Gene Riley, pressroom foreman for Employer-Defendant, met with Plaintiff to discuss Plaintiff's job performance, which had been negatively impacted following Plaintiff's single car accident and subsequent arrest for driving while intoxicated several days earlier. Mr. Willard warned Plaintiff that any further infractions would result in termination.
4. On October 24 and 27, 2008, Plaintiff's job duties included managing pressroom operations while Mr. Riley was away. Plaintiff had previously filled in for Mr. Riley doing similar duties and had demonstrated the ability to do so. However, on both October 24 and 27, 2008, *Page 3 
Plaintiff produced substandard work product and failed to complete one customer's order, resulting in financial loss and jeopardy to client relationships for Employer-Defendant. Plaintiff demonstrated other performance problems such as having a poor attitude and being idle on the clock.
5. As a result of Plaintiff's poor attitude, unacceptable performance at the end of October 2008, and the previous warning given in June 2008, Plaintiff's employment was terminated on November 6, 2008. Plaintiff was escorted from the building after he was terminated.
6. On November 12, 2008, Plaintiff filed a Form 18 and a Form 33 alleging an injury by accident to his left knee on July 23, 2008, due to falling off of a catwalk. Shortly after his termination, Plaintiff also filed an OSHA complaint and an unemployment claim, which was denied. OSHA visited Employer-Defendant's premises in response to the complaint but issued no citations.
7. Prior to November 12, 2008, Plaintiff failed to provide written notice to Employer-Defendant of a claim for injury on July 23, 2008.
8. Prior to November 6, 2008, Plaintiff had worked his regular job without any problems with physical ability and, in fact, had taken on some additional duties.
9. The testimony supporting Plaintiff's claim for an injury was from Plaintiff and Vlad Kozlik, a co-worker and alleged eyewitness. Mr. Kozlik's employment with Employer-Defendant had been terminated at the end of November 2008 due to the economy.
10. Plaintiff's testimony concerning the details of his alleged injury was inconsistent with the testimony of his witness, Vlad Kozlik, despite the fact that Mr. Kozlik was only eight to ten feet away and had a clear view of the site of the alleged injury. Plaintiff testified that his body *Page 4 
landed on the floor with his left foot caught between the catwalk and machine, whereas Mr. Kozlik testified Plaintiff fell in a sitting position on the catwalk rather than on the floor.
11. The undersigned do not find the testimony of Plaintiff and Mr. Kozlik credible regarding Plaintiff's injury.
12. Plaintiff's testimony at the hearing about the time of his alleged accident was inconsistent with his recorded statement taken November 18, 2008. In his recorded statement, Plaintiff was unsure about the time of his accident but guessed it was between 6:00 p.m. and 8:00 p.m. At the hearing, Plaintiff was definite that his injury occurred between 9:00 p.m. and 10:00 p.m.
13. Plaintiff sought no medical treatment until more than two weeks after the alleged injury, on August 8, 2008, when he presented to Dr. David Duralia, his primary care physician.
14. Plaintiff told Dr. Duralia that he injured himself when he fell down a ladder and became stuck in the rungs of the ladder. Plaintiff did not tell Dr. Duralia that he sustained an injury at work due to falling off of a catwalk. Plaintiff's allegation that Dr. Duralia was not capable of understanding the concept of a catwalk is not credible.
15. Dr. Duralia's examination of Plaintiff's left knee revealed no swelling, no redness, and negative Lachman's, valgus stress, and varus stress tests. Dr. Duralia opined Plaintiff's ligament appeared intact. Based on Plaintiff's subjective complaints, Dr. Duralia diagnosed a possible strain versus meniscal tear.
16. Although at the hearing Plaintiff denied prior knee problems, he had complained to Dr. Duralia of knee pain on July 8, 2008, only two weeks before the alleged injury.
17. Plaintiff presented to Dr. Donald Campbell at Carolina Orthopaedic Specialists on August 19, 2008. Plaintiff told Dr. Campbell that he injured himself when he fell down a *Page 5 
stepladder and got his foot stuck and twisted in the rungs. Plaintiff did not tell Dr. Campbell that he sustained an injury at work due to falling off a catwalk. Plaintiff's allegation that Dr. Campbell was not capable of understanding the concept of a catwalk is not credible.
18. Dr. Campbell's examination of Plaintiff revealed no swelling, no effusion, full extension and flexion, stability to varus and valgus stress testing, no clicking or popping, and a negative Lachman's test. Based on Plaintiff's subjective complaints, Dr. Campbell ordered a left knee MRI.
19. The left knee MRI, performed on August 30, 2008, showed a fluid signal superficial to the medial collateral ligament that was thought to represent inflammation or a low grade sprain.
20. Plaintiff returned to Dr. Campbell on September 9, 2008. Dr. Campbell opined, based on his examination and the physical examination, that Plaintiff had no evidence of a meniscal or ligamentous injury. Dr. Campbell's diagnosis was a contusion to the medial meniscus, a ligament strain, or at most a Grade I injury. Dr. Campbell recommended exercise and indicated that further follow-up was not necessary.
21. Dr. Campbell testified to a reasonable degree of medical certainty that Plaintiff did not need further treatment, was not a surgical candidate, and did not retain any permanent impairment. At no time during Dr. Campbell's treatment of Plaintiff did he feel that Plaintiff was unable to work or that any work restrictions were necessary.
22. Plaintiff mentioned knee pain to Dr. Duralia on October 10, 2008, but otherwise sought no further treatment for his left knee until January 6, 2009, when he presented to Dr. Jerry Barron at Barron and Homesley Orthopaedic Specialists. Plaintiff told Dr. Barron that that he injured his left knee when he slipped and fell, getting his knee caught between the catwalk and a *Page 6 
printing thrust and twisting his knee. On physical examination of the left knee, Dr. Barron noted medial and lateral joint line pain, kneecap pain, crepitus with the grind test, and mild valgus laxity. Dr. Barron's impression was possibly some internal derangement, despite the MRI. Dr. Barron recommended physical therapy and that Plaintiff remain out of work until his follow-up visit in four to six weeks. If Plaintiff failed to improve with physical therapy, Dr. Barron opined an examination under anesthesia and arthroscopy could be necessary.
23. Plaintiff participated in physical therapy from January 14 through February 12, 2009, after which he was discharged.
24. On February 17, 2009, Plaintiff returned to Dr. Barron with continued complaints of instability. Dr. Barron discussed treatment options with Plaintiff, and Plaintiff expressed a wish to proceed with an examination under anesthesia to include a possible meniscectomy and possible anterior cruciate ligament (ACL) reconstruction. Dr. Barron indicated Plaintiff would remain out of work pending surgery. Dr. Barron stated in his reports and deposition that Plaintiff's MRI was essentially negative.
25. In February 2009, Plaintiff sustained an injury to his knee when he caught his grandmother as she fell. This injury caused increased pain and swelling in his knee.
26. On March 17, 2009, Plaintiff returned to Dr. Duralia and complained of worsening left knee pain, as well as the development of pain in his left hip.
27. At Defendants' request, Plaintiff presented to Dr. James Comadoll at RoMedical/Comadoll, Watts, and Ellison Orthopaedics, Sports Medicine, and Spine Surgery for an independent medical evaluation on June 2, 2009. Plaintiff reported an injury to his left knee when he slipped off of a short stepladder at work and got his foot stuck in the rungs, twisting and rotating on the way down. On physical examination of Plaintiff's left knee, Dr. Comadoll noted *Page 7 
that Plaintiff's "range of motion is quite good, his strength was not at a significant deficit." Dr. Comadoll noted Plaintiff had "hyperlaxity" in both knees, slightly greater on the left, but he felt this laxity was how Plaintiff's body naturally was rather than indicative of an injury. Plaintiff complained of diffuse tenderness rather than anything discrete that pointed Dr. Comadoll to an ACL tear or any other specific injury.
28. Dr. Comadoll opined that, had Plaintiff sustained an ACL injury at work, Plaintiff would not have been able to continue working on the evening of the alleged injury and for several months thereafter.
29. Dr. Comadoll reviewed the MRI scan and opined it showed only a slight medial collateral ligament strain. Dr. Comadoll felt the MRI was adequate to assess the ACL and other ligaments of the knee. In Dr. Comadoll's experience as a board-certified orthopedist who devotes 50% of his practice to treating knee conditions, if an MRI is incorrect, he generally finds something on the physical examination to suggest the presence of some pathology that the MRI missed. In Plaintiff's case, Dr. Comadoll saw nothing on physical examination of Plaintiff's knee to suggest that the MRI had failed to show any pathology.
30. Dr. Comadoll opined that very little treatment, if any, was necessary for the Grade I injury shown on the MRI, and that surgery is never indicated for such an injury. Dr. Comadoll's testimony was that nothing on the MRI or his clinical examination of Plaintiff suggested a surgical condition. Dr. Comadoll opined that the risks of exploratory surgery, although rare, outweighed the possibility of any benefit from the surgery to Plaintiff. Dr. Comadoll recommended that Plaintiff continue strengthening therapy and over-the-counter medications. He opined that Plaintiff could work and did not have any permanent impairment of his left knee. *Page 8 
31. The undersigned assign the most weight to the testimony of Dr. Campbell, the orthopedist who examined Plaintiff most immediately after Plaintiff's date of alleged injury.
32. The greater weight of the competent and credible evidence of record fails to establish that Plaintiff sustained an injury by accident at work on July 23, 2008. Specifically, as stated above, Plaintiff is not accepted as a credible witness as to the testimony offered at the hearing regarding the history of the alleged injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In a workers' compensation claim, the employee has the burden of proving that his claim is compensable. Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the competent and credible evidence of record fails to establish that Plaintiff suffered an injury by accident at work on July 23, 2008, and therefore his claim is not compensable. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 ORDER *Page 9 
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This the 26th day of August, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1